**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MELISSA STANSBURY,** individually and on behalf of similarly situated persons,<br><br>  Plaintiff,<br><br> **v.**<br><br> **BARRICK ENTERPRISES, INC.** and **TODD BARRICK**, individually,<br><br>  Defendants. | Case No. 1:22-CV-00342-YK |

**MEMORANDUM OF LAW IN SUPPORT OF PARTIES' JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

Named Plaintiff Melissa Stansbury, individually and on behalf of similarly situated persons ("Plaintiff"), and Defendants Barrick Enterprises, Inc. and Todd Barrick ("Defendants") (together, the "Parties"), by and through the undersigned counsel of record, hereby present this Memorandum of Law in Support of the Parties' Joint Motion for Preliminary Approval of Settlement Agreement for the Court's consideration.

## I.    FACTS AND PROCEDURAL HISTORY

Defendants own and operate a chain of six Domino's pizza stores located in central Pennsylvania. On March 8, 2022, Plaintiff filed suit against Defendants alleging minimum wage violations resulting from alleged under-reimbursed vehicle costs in violation of the Fair Labor Standards Act ("FLSA") (nominal wages – unreimbursed vehicle costs = subminimum net wages).[1] Further, Plaintiff alleged that Defendants applied the same reimbursement method to all

---

[1] As part of the settlement and pursuant to Rule 15, the Parties have agreed that Plaintiff will file an Amended Complaint to add claims under the Pennsylvania Minimum Wage Act of 1968 ("the PMWA"), 43 P.S. § 3301 *et seq.*, and the Pennsylvania Wage Payment and Collection Law ("the PWPCL"), 43 P.S. § 260.1 *et seq.* Plaintiff has incorporated this request for leave to file the Amended Complaint with this Motion and attached the proposed First Amended Complaint as an Exhibit.

their delivery drivers during the recovery period. Plaintiff asserted those claims individually and on behalf of similarly situated delivery drivers currently and formerly employed by Defendants.

Counsel for the Parties have previously represented Domino's franchisees and delivery drivers in cases entailing similar claims, in which  a similar settlement structures were approved. *See, e.g., Trimble v. Penn Five Pizza, Inc. et al.,* Case No. 5:22-cv-2687 (KBH) (E.D. Pa.) (ECF 35, 37) (approving hybrid class and collective resolution similar in structure to the settlement proposed here). Based on this experience, and with the assistance of a seasoned wage and hour class and collective action mediator, counsel negotiated a similar resolution structure they believe is in the Parties' interest and serves the additional and ongoing interest of judicial economy.

The settlement is based on an informed decision by both sides. The Parties discussed disclosure of specific work time, pay, mileage and reimbursement data needed to evaluate liability and calculate damages. Defendants produced that data, which Plaintiff's counsel vetted, thoroughly reviewed, and analyzed through detailed spreadsheet calculations.

Defendants deny any liability or wrongdoing of any kind associated with the claims alleged by Plaintiff, and further deny that, for any purpose other than settling this matter, this action is appropriate for class or collective treatment. Plaintiff, on the other hand, asserts that Defendants failed to comply with federal and state minimum wage requirements embodied in the FLSA and Pennsylvania law. Class Counsel understands Defendants' position and defenses, but believes Plaintiff, individually and on behalf of the Class, could ultimately succeed at trial on the basis of common proof. All Parties recognize the uncertainty of the outcome, and appreciate the expense and time associated with further litigation, which motivated settlement. The attorneys who negotiated on behalf of the Parties are experienced litigators, and they vigorously represented their clients' respective interests. *See* Forester Declaration. The settlement reached in this litigation

constitutes a fair and reasonable compromise of a *bona fide* dispute involving several vigorously disputed legal and factual issues.

The Parties differing views led to contention and prolonged negotiations. However, through persistence, the Parties were finally able to reach a settlement agreement after three successive mediations.

The settlement considers the possible value of the claims balanced against the risk, effort, expense and delay of further litigation and possible appeals. Notably, unlike the vast majority of pizza companies, Defendants' data shows that they limited their liability by providing company vehicles and by paying wages considerably greater than the state and federal minimum wage rate. Plaintiff considered those anomalies. In sum, Plaintiff recovered more than half of the estimated maximum actual damages calculated by applying a $0.55 per mile reimbursement rate to Defendants' work time, pay, mileage and reimbursement records.

## II. KEY SETTLEMENT TERMS

The settlement class is defined as:

Defendants' drivers who received mileage reimbursements from (a) the earlier of 3 years prior to actual opt-in date or December 20, 2021 through (b) the date of Preliminary Approval of Settlement.

Pursuant to Pennsylvania law and Federal Rule of Civil Procedure 23 ("Rule 23"), Class Members that do not return Claim Forms but do not opt-out of the settlement, i.e. are only members of the Rule 23 Class, will be bound by a state law wage and hour release and will retain all rights available under law to bring claims under the FLSA, subject to the applicable statute of limitations and other defenses available to Defendants.

The Parties agreed to settle all putative class members' wage and hour claims by Defendants establishing a settlement fund inclusive of payments to the putative class, attorneys'

fees, litigation and mediation costs, administration costs and a modest service award. All class members who do not opt-out, but do not submit a claim, will receive a minimum payment. The remaining settlement funds will be distributed to class members who submit claims based on the following equitable formula:

- For each Settlement Class Member, the total number of his/her recorded miles making deliveries for after taking into account offsets for wages paid over MW in workweek based on Defendants data during the Class Period shall be his/her "Individual Miles." The aggregate of all Individual Miles among all Settlement Class Members shall be the "Class Miles." For the purpose of calculating the payment ratio only, miles shall be valued at the IRS rate.

- Each Settlement Class Member's Individual Miles shall be divided by the Class Miles to obtain his/her "Payment Ratio."

- Each Settlement Class Member's Payment Ratio shall be multiplied by the Net Settlement Amount to arrive at his/her Potential Settlement Payment. Each Settlement Class Member who files a valid and timely claim form, shall be eligible for a payment based on their Payment Ratio applied to the Net Settlement Fund, sometimes referred to as "pro rata share" of the Net Settlement Fund, with a minimum payment of $30.00.

- Each Settlement Class Member who does not file a Claim Form and does not exclude themselves shall receive a payment of $30.00.

All settlement payments will be treated as non-taxable reimbursement for job expenses.

The release binding Settlement Class Members who do not opt out is limited to wage and hour claims provides:

Upon the Effective Date of the Settlement, the Class Representative and Settlement Class Members regardless of whether they cash or otherwise negotiate their settlement check, will release and forever discharge Defendants, and each of their former and present predecessors, successors, parents, subsidiaries, franchisors, insurers, attorneys and affiliates, whatever their current or former legal names or legal entity status, and each of their respective current and former owners, officers, directors, employees, partners, shareholders, attorneys and agents and any other successors, assigns, or legal representatives ("Released Parties"), from any and all claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, accruing during the Class Period, arising under the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment and Collection Law, common law claims for unjust enrichment, or including any similar state, municipal, or local laws, which arise out of, are based on, or encompass facts that were asserted in the Action, including claims such as expense reimbursement claims; meal and rest break claims; dual job/80-20 claims; tip credit claims; and notification, posting and record claims; and/or any related claims for liquidated damages, penalties, attorneys' fees and costs, penalties and interest; any and all common law and equitable claims (including claims for breach of contract, unjust enrichment, quantum meruit, etc.); and any and all derivative claims relating to unpaid wages, minimum wage compensation or overtime ("Released Claims"). Additionally, the Class Representative, Opt-in Plaintiffs, and any Participating Class Member who files a valid Claim Form, including Late Claimants, shall release any claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et. seq*. Without limiting the generality of the foregoing, the claim preclusion effect of this Settlement, and the judgment thereon, for *res judicata* purposes shall be co-extensive with this release of claims.

Settlement Agreement ¶51.

Based on service to the class in initiating this case and working with counsel to investigate and prosecute this litigation, the Named Plaintiff seeks a modest service award in the amount of $5,000.00, subject to Court approval.

Subject to the Court's approval, Plaintiff's Counsel will seek fees not to exceed $53,000.00 of the total settlement value plus reimbursement of actual litigation costs in the amount of $14,000. Defendants will not oppose or object to this request for attorneys' fees and costs.

The Parties have jointly selected a settlement administrator, CAC Services Group, LLC, whose fees (not to exceed $12,000) will be paid from the settlement amount.

A notice of collective action settlement (the "Notice") and claim form ("Claim Form"), attached to the Settlement Agreement as Exhibit A, will be mailed to all putative class members as soon as practicable after the Court's preliminary approval of this settlement. The Parties' proposed Notice should be approved because it explains in clear terms (1) the nature of the settlement, (2) the factors used to determine the amount each class member has been allocated under the settlement, and (3) each Settlement Class Member's right to submit a claim form, object to the settlement, or exclude themselves from the settlement.

The Settlement Administrator will send a notice of preliminary approval and settlement to each class member and each of them will have 50 days after mailing of the notice to submit a claim form, file objections or to request exclusion from the settlement.  Class members will also have the opportunity to appear at the final approval hearing to be set by the Court.

## III.    ARGUMENT

### A.    The Settlement Agreement Should be Preliminarily Approved by the Court

The settlement of class and collective action litigation is favored and encouraged in the Third Circuit. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts"); *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlements, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *Murphy v. Hundreds Is Huge, Inc.*, No. 1:21-CV-00204-RAL, 638 F. Supp. 3d 486, 505 (W.D. Pa. June 10, 2022) ("[T]he court encourages settlement of

complex litigation that otherwise could linger for years) (internal citations omitted).

### 1. Legal Standard for Approval of FLSA Settlements

When parties present a proposed FLSA settlement to the court, "the district court may enter a stipulated judgment if it determines that the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Kapolka v. Anchor Drilling Fluids USA*, No. 2:18-cv -01007-NR, 2019 U.S. Dist. LEXIS 182359, at *2 (W.D. Pa Oct. 22, 2019); *see also Solkoff v. Pa. State Univ.*, 435 F.Supp.3d 646, 652 (E.D. Pa. 2020) ("The Court will approve a settlement of FLSA claims if it settles a bona fide dispute and (1) the settlement is fair and reasonable for the employee(s), and (2) the agreement furthers the FLSA's implementation in the workplace.") (quoting *Howard v. Phila. Hous. Auth.*, 197 F.Supp.3d 773, 777 (E.D. Pa. 2016)).

To determine if an FLSA settlement agreement is fair and reasonable, courts generally proceed in two steps: (1) "first, considering whether the agreement is fair and reasonable to the plaintiff-employees and, if found to be fair and reasonable, (2) then, considering whether it furthers or 'impermissibly frustrates' the implementation of the FLSA in the workplace." *Dino v. Pa.*, No. 1:08-cv-01493, 2013 U.S. Dist. LEXIS 111742, at *12-13 (M.D. Pa Aug. 8, 2013). Further, preliminary approval is appropriate where "the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Then v. Great Arrow Builders, LLC*, No. 2:20-cv-00800-CCW, 2022 U.S. Dist. LEXIS 32051, at *5-6 (W.D. Pa. Feb. 23, 2022). Again, the Third Circuit recognizes a "strong presumption" in favor of class settlements. *See Ehrheart*, 609 F.3d at 595-96.

The Parties' clearly had a *bona fide* dispute. Plaintiff alleged that Defendants under-reimbursed the delivery drivers' automobile expenses, causing minimum wage violations.

Defendants deny Plaintiff's substantive allegations, assert that the delivery drivers were reasonably reimbursed for vehicle costs, and contend that the delivery drivers were compensated at or above the applicable minimum wage. Further Defendants contested the validity of collective treatment of this matter and resolution was only reached following three successive mediations. Thus, the claims were actually in dispute. Defendants produced, and the Parties analyzed, detailed data specific to Plaintiff's allegations of liability and damages. If a jury agreed with Plaintiff's allegations about a reasonable reimbursement rate, Defendants could have faced a sizable monetary judgment, which could include liquidated damages, as well as the obligation to pay Plaintiff's attorneys' fees and costs. On the other hand, if a jury agreed with Defendants, Plaintiff would obtain no recovery whatsoever.

The settlement is fair and reasonable for the reasons explained above. Plaintiff recovered more than half of the estimated maximum value of actual damages calculated based on a $0.55 pr mile reimbursement rate. That is a classic compromise. The settlement furthers the FLSA's purpose because it restores minimum wage payments to low-wage earning employees.

## 2. Legal Standard for Approval of Class Action Settlement

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the settlement of class actions. H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009) ("NEWBERG"). Preliminary approval is the first of three steps comprising the approval process for settlement of a class action. The second step is the dissemination of notice of the settlement to all class members. Finally, there is a settlement approval or final fairness hearing. *See* Manual for Complex Litigation § 21.632-633 (4th ed. 2004).

The Third Circuit stresses that the most relevant consideration at the preliminary approval stage is whether the proposed settlement is within a "range of reasonableness" in light of all costs

and risks of continued litigation. *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 148 F.3d 283, 322 (3d Cir. 1998). To determine whether the settlement is fair, reasonable, and adequate under Rule 23(e), courts in the Third Circuit apply a nine-factor test: 1) the complexity, expense, and likely duration of the litigation; 2) the reaction of the class to the settlement; 3) the stage of the proceedings and the amount of discovery completed; 4) the risks of establishing liability; 5) the risks of establishing damages; 6) the risks of maintaining the class action through the trial; 7) the ability of the defendants to withstand a greater judgment; 8) the range of reasonableness of the settlement fund in light of the best possible recovery; and 9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); (reaffirmed in *In re Warfarin*, 391 F.3d at 534-35). However, at the preliminary approval stage, a court need not address every factor: if the proposed settlement "falls within the range of possible approval," the Court should grant preliminary approval and authorize the Parties to provide notice of the proposed settlement to the class members. *See Flores v. Eagle Diner Corp.*, No. 2:18-CV-01206-AB, 2019 U.S. Dist. LEXIS 141743, at *18-19 (E.D. Pa. Aug. 21, 2019); *see also Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 444 n.7 (E.D. Pa. 2008) ("the standard for preliminary approval is far less demanding.").

Within the Third Circuit, a class settlement is entitled to an initial presumption of fairness where it resulted from arm's-length negotiations between experienced counsel, there was sufficient discovery, and only a small percentage of objectors and opt-outs.[2] *Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 493 (E.D. Pa. 2018); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 233, n. 18 (3d Cir. 2001); *In re GMC Trucks*, 55 F.3d at 785; Manual for Complex Litigation, § 30.42 (41

---

[2] Here, because the proposed settlement/opt-out notice has not yet been disseminated, there are no objections or opt-outs to the Settlement. This information will be provided in greater detail at the final approval stage, and after the notice period has concluded.

Ed.). "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to Class representatives or segments of the Class, and falls within the range of possible approval, then the court should direct that notice be given to the Class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement." *Gaskin v. Pa.,* 389 F. Supp.2d 628, 630 (E.D. Pa. 2005); *see also In Re GMC Trucks*, 55 F.3d at 785-86.

Here, and as further outlined below, the proposed Settlement is fair, reasonable, and adequate. Further, when making this determination, the Court should give deference to the opinions of Class Counsel, who have researched the issues and are familiar with the facts of the litigation. *Austin v. Pa. Dep't of Corrs*., 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("In determining the fairness of a proposed settlement, the Court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class.").

### a.  Complexity, Expense, and Likely Duration of the Litigation

This litigation involved complex and novel issues that lead to inherent risks. This case is likely to become more expensive, both to the Parties in terms of costs and time and to the Court in terms of deciding difficult and complex issues. In addition, reducing the class trial to a judgment and the eventual appeal would likely involve complex and time-consuming issues. By reaching a favorable settlement now, the Parties have avoided the need to resolve significant and time-consuming motions, expensive experts, and discovery issues and the resources a jury trial would have entailed.  They have also eliminated uncertainty for the Class. Making substantial monetary relief available now, without significant additional time, effort, or risk, should weigh heavily in favor of approval. *See In re Linerboard Antitrust Litig*., 292 F. Supp. 2d 631, 642 (E.D. Pa. 2003) (noting that the "protracted nature of class action antitrust litigation means that any recovery would

be delayed for several years," and "substantial and immediate benefits" to class members favors settlement approval); *Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) (where litigation is potentially lengthy and will result in great expense, settlement is in the best interest of the class members).

### b. Reaction of the Class to the Settlement

At this stage, notice has not been disseminated to the Class. Accordingly, Class Members have not yet had the opportunity to opine on the Settlement. Counsel intends to address this factor, as well as all relevant notice-related data, at the final approval stage of the litigation, and once notice has successfully been sent to the Class.

### c. Stage of the Proceedings and the Amount of Discovery Completed

Although this case was settled efficiently, counsel for the Parties have litigated numerous similar claims by pizza delivery drivers around the nation. Thus, they were able to quickly and efficiently identify the critical data needed to both evaluate the claims and calculate potential damages. That data was disclosed, then utilized to evaluate both potential liability and various damage scenarios. The Parties were also able to laser-focus their settlement efforts, and engaged a highly respected and experienced mediator, the Honorable Bradford Stillman (E.D. VA, retired), to facilitate these efforts through multiple mediation sessions. Thus, both sides understood the relevant evidence prior to settlement, and efficiently achieved settlement without additional involvement by this Court. Such achievement warrants settlement approval. *See, e.g., Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 115 (E.D. Pa. 2005) (finding this factor satisfied where the parties "gained such an appreciation through their exchange of some discovery" and participation in the mediation process).

### d.  Risk of Establishing Liability and Damages

The goal of this factor is to "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Prudential Ins. Co.*, 148 F.3d at 319.

Here, there is no guarantee Plaintiff will be successful on the merits.  The law is unsettled on whether Defendants were required to pay the IRS rate with some courts holding the IRS rate is not mandatory and delivery drivers may be reimbursed a "reasonable approximation" of their expenses. Defendants argue they did, in fact, reimburse drivers a "reasonable approximation" of their expenses. Thus, if the Court adopted the "reasonable approximation" approach, there is the possibility that Plaintiff's claims fail. Additionally, there is risk of denial of class certification, substantially reducing the possible amount of recovery. The risk of denial of class certification also carried the potential of increasing the costs because multiple drivers would likely bring individual claims against Defendants. Further, the legal issues concerning class certification and proper reimbursement are susceptible to appeal.  Any such appeal would be expensive and would delay any potential relief to the class.

For these reasons, it is Class Counsel's considered opinion that Settlement on the proposed terms, given the potential risks, reward, and prospective costs going forward, is the most prudent course for Plaintiff and the Settlement Class.

### e.  Risk of Maintaining a Class Action Through Trial

This factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarin*, 391 F.3d at 537. Because class certification is subject to review and modification at any time during the litigation, the uncertainty of maintaining class certification favors settlement. *See Zenith Labs., Inc. v. Carter–Wallace, Inc*., 530 F.2d 508,

512 (3d Cir. 1976).

**f.   Ability of Defendants to Withstand a Greater Judgment**

This factor assesses the ability of defendants to withstand a greater judgment, and is "most clearly relevant where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." *Reibstein v. Rite Aid Corp.*, 761 F.Supp.2d 241, 254 (E.D.Pa.2011). In evaluating the Settlement, Plaintiff's counsel weighed Defendants' contention that they lack sufficient assets to pay a larger settlement or judgment. Further, Plaintiff's counsel considered that Defendants' business encompasses only six franchise stores. Comparatively, Plaintiff's counsel have repeatedly litigated against pizza chains operating dozens or hundreds of franchise stores. These factors support settlement approval.

**g.   Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and All of the Risks of Litigation**

"This inquiry measures the value of the settlement itself to determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *In re Gen. Motors*, 55 F.3d at 806. In *General Motors*, the Third Circuit further explained:

> [I]n cases primarily seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement . . . The evaluating court must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.

*Id*.

As previously discussed, the proposed Settlement confers a substantial benefit on the class. Given the novelty and difficulty of cases involving minimum wage violations based on under-reimbursed vehicle costs, the delivery drivers' recovery at trial could have ranged anywhere from

a sizable recovery to very little to nothing at all. Thus, the amount agreed to by the Parties following a series of contentious mediations provides a very successful result for Plaintiff and all other delivery drivers. The total settlement amount is the result of good faith, but contentious, arm's-length negotiation and represents an excellent result for the class. Some class members will receive substantial payments for their alleged unreimbursed vehicle expenses. And while some class members will receive less than others – based on relatively fewer miles driven within the applicable recovery period – all class members will receive at least a $30.00 minimum payment. Meanwhile, predicting how a jury would weigh the evidence here is particularly difficult because no known benchmarks exist for how a jury might decide or value the claims. Consequently, it is possible the class members would recover less than the damages they allege, or no damages at all. Plaintiff and her counsel necessarily, and properly, weighed the risk of proceeding with an assured recovery obtained through negotiation.  In sum, this factor warrants settlement approval.

**B.**    **The Court Should Certify the Proposed Class for Settlement Purposes[3]**

The Parties request that the Court certify the proposed Class for settlement purposes only pursuant to the Settlement Agreement.

**1.   Rule 23(a) Requirements are Satisfied**

In order to certify a class under Rule 23, a named plaintiff must establish that the class meets each of the four requirements of subsection (a) of the Rule which provides:

> One or more members of a class may sue or be sued as representatives parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

---

[3] For purposes of settlement only, Defendants have agreed not to contest the statements made in the Parties' Joint Motion for Preliminary Approval.  However, Defendants do not waive, and expressly reserve, any defenses or denials that class certification is proper in this case should the Court not approve the settlement, or the settlement not be perfected. In fact, Defendants agreed to the amendment of the Complaint for settlement purposes only and the Settlement Agreement provides that in the event the Settlement does not become final, the Parties shall be returned to their respective statuses as of the date and time immediately prior to the execution of this Agreement.  See Settlement Agreement ¶63(b).

of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Barnes v. Am. Tobacco Co*., 161 F.3d 127, 140-141 (3d Cir. 1998); *In re Prudential,* 148 F.3d at 308-09. These four elements are referred to in the short-hand as (1) "numerosity," (2) "commonality," (3) "typicality," and (4) "adequacy of representation." *In re Corel Corp. Secs. Litig*., 206 F.R.D. 533, 539 (E.D. Pa. 2002). Here, all four elements are satisfied for the purpose of certifying the proposed Settlement Class.

### a.    Rule 23(a)(1): Numerosity

Plaintiff asserts that her claims satisfy the "numerosity" requirement of Rule 23(a)(1), as the class consists of several hundred current and former delivery drivers. This Court has held that a "class does not need a magic number of claimants" nor must the [plaintiffs] allege the exact number or identity of the class members." *Cohen v. Chi Title Ins. Co*., 242 F.R.D. 295, 299 (E.D. Pa. 2007). However, courts in this Circuit generally recognize that at least 40 class members typically satisfies the "numerosity" requirement. *See also Gates v. Rohm & Haas*, 265 F.R.D. 208, 215 (E.D. Pa. 2010) (recognizing threshold of approximately 40 class members); *see also Jackson v. S.E. Pa. Trans. Auth*., 269 F.R.D. 168, 185 (E.D. Pa. 2009) ("it is proper for the court to accept common sense assumptions in order to support a finding of numerosity"); *Stewart v. Abraham*, 275 F.3d 220, 226- 27 (3d Cir. 2001). Thus, Plaintiff asserts that the class is so numerous that separate joinder of each member is impracticable.

### b.    Rule 23(a)(2): Commonality

The Settlement Class also satisfies the commonality requirement. *See generally Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011). Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that the class members "have suffered the same injury." *Wal-Mart*, 131 S. Ct. at 2548, 2551; *see also Baby Neal v. Casey*, 43 F.3d 48, 56 (3d

Cir. 1994). The commonality inquiry focuses on the defendant's conduct. *Sullivan v. DB Invests., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) ("commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members"). "Commonality exists when proposed class members challenge the same conduct of the defendants." *Schwartz v. Dana Corp.*, 196 F.R.D. 275, 279 (E.D. Pa. 2000).

A finding of commonality does not require that all class members share identical claims as long as there are common questions at the heart of the case. *In re Warfarin*, 391 F.3d at 530 (quotation omitted); *Prudential*, 148 F.3d at 310; *Baby Neal*, 43 F.3d at 56 (finding "[f]actual differences among the claims of the putative class members do not defeat certification"). "Commonality will not be defeated simply because 'individual facts and circumstances' are important to the resolution of class members' claims." *Contawe v. Crescent Heights of Am., Inc.*, No. 04-cv-2304, 2004 U.S. Dist. LEXIS 25746, at *8-9 (E.D. Pa. Dec. 21, 2004) (citing *Baby Neal*, 43 F.3d at 57). A single common question is sufficient to satisfy the requirements of Rule 23(a)(2). See *id.*; see also 1 A. Conte & H. Newberg, Newberg on Class Actions (Fourth), § 3.10 at 272-74 (2002).

Here, Plaintiff asserts that all of the delivery drivers' claims arise out of the same legal theory (minimum wage violations resulting from under-reimbursed vehicle costs) and the same questions of law and fact central to the claims against Defendants include:

a.     Whether Defendants' reimbursement method provided sufficient vehicle reimbursement to its delivery drivers;

b.     What reimbursement rate should Defendants have applied;

c.     Whether the class members' vehicle-related expensed resulted in payment below minimum wage;

d.    Whether Defendants willfully violated applicable wage and hour laws; and

e.    Whether Plaintiff and the class members have sustained damages and, if so, the proper measure of damages.

Moreover, Plaintiff asserts that her claims further satisfy the "commonality" requirement because all class members held the same job, performed the same primary job duty of delivering pizzas and other food items to Defendants' customers using their personal vehicles, were compensated by similar hourly pay rates, drove similar delivery distances, Defendants reimbursed all delivery drivers with a comparable mileage rate and/or flat rate per delivery, and their claims are based on the same legal theory.

Further, Plaintiff asserts that either one of two recognized legal theories applies to all claims. Under either theory, the central question is common to all of Defendants' delivery drivers: what reimbursement rate should have been applied. Under the first possible theory, Defendants have failed to reimburse a "reasonable approximation" of the cost of driving personal vehicles for pizza delivery. *See, e.g., Sullivan v. PJ United, Inc.*, 362 F. Supp. 3d 1139, 1154 (N.D. Ala. 2018) (rejecting the theory that the IRS rate is the "presumptively reasonable rate" and holding that employers may reasonably approximate expenses to comply with minimum wage requirements); *Perrin v. Papa John's Int'l, Inc.* ("*Perrin III*"), 114 F. Supp. 3d 707, 711 (E.D. Mo. 2015) (denying summary judgment for plaintiffs on plaintiffs' theory that the IRS standard business mileage rate is the only reasonable approximation of vehicle expenses and leaving question for jury to decide based on all of the evidence); *Perrin v. Papa John's Int'l., Inc.* ("*Perrin I*"), No. 4:09cv01335AGF, 2013 U.S. Dist. LEXIS 181749, *20-24 (E.D. Mo. Dec. 31, 2013) (explaining development of applicable law and citing cases). Under Plaintiff's other legal theory, Defendants should have reimbursed at the IRS standard business mileage rate.  *See, e.g., Zellagui v. MCD Pizza, Inc.*, 59

F. Supp. 3d 712, 716 (E.D. Pa. 2014). The answer to either of those two possible questions is common to the class because it will drive resolution of all claims asserted. Thus, for settlement purposes, the proposed class members share sufficient commonality.

### c. Rule 23(a)(3): Typicality

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Whereas commonality evaluates the sufficiency of the class, typicality judges the sufficiency of the named plaintiffs as representatives of the class. *Baby Neal*, 43 F.3d at 57. A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class. *See, e.g., Ikon Office Solutions, Inc. Litig.*, 191 F.R.D. at 463; *In re Centocor Secs. Litig. III.*, No. 98-260, 1999 U.S. Dist. LEXIS 1224, at *6 (noting that typicality requirement of Rule 23(a)(3) is satisfied where "litigation of the named plaintiffs' claims can reasonably be expected to advance the interests of absent class members"); *see also SEPTA v. Orrstown Fin. Servs., Inc.*, No. 12-cv-0993, 2012 U.S. Dist. LEXIS 116937, at *8 (M.D. Pa. Aug. 20, 2012).

Further, "typicality, as with commonality, does not require that all putative class members share identical claims." *In re Warfarin*, 391 F.3d at 531-32. One district court in this Circuit aptly noted in granting class certification to a PMWA claim, "the principal questions presented by the suit go to [defendant's] corporate policies. The controversy here is whether those policies violate the PMWA and whether those policies were applied to Plaintiff and other potential class members." *Soles v. Zartman Constr., Inc.*, No. 13-cv-29, 2014 U.S. Dist. LEXIS 98181, at *16 (M.D. Pa. July 18, 2014).

Plaintiff alleges that he, just like all of the other delivery drivers, was not reimbursed for all vehicle expenses pursuant to Defendants' company-wide reimbursement method, which caused

minimum wage violations. Thus, under either of the two legal theories described above, Named Plaintiff Stansbury, just like all of Defendants' delivery drivers, must prove that Defendants provided an insufficient reimbursement rate. Thus, Ms. Stansbury's claim is typical of the claims of all of Defendants' other delivery drivers.

### d.  Rule 23(a)(4): Adequacy

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement encompasses two distinct inquires designed to protect the interests of absentee class members: whether the named plaintiffs' interests are sufficiently aligned with the absentees', and the qualifications of the counsel to represent the class." *Ripley v. Sunoco, Inc*., 287 F.R.D. 300, 309 (E.D. Pa. June 26, 2012); *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 182 (3d Cir. 2012).

Under the first prong, the Court determines whether Ms. Stansbury has interests antagonistic to those of the Settlement Class. The second prong analyzes the capabilities and performance of Class Counsel under Rule 23(a)(4) based upon factors set forth in Rule 23(g). *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007); *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010). Here, Plaintiff asserts that adequacy is readily met, and that she can satisfy both prongs.

The Named Plaintiff has already demonstrated that she will vigorously champion the class members' rights. She sought counsel experienced in vehicle reimbursement / minimum wage claims, provided her attorneys information about the claims, filed a complaint on behalf of all of Defendants' delivery drivers, and obtained a settlement beneficial to all of them, not just herself. Ms. Stansbury has no interests antagonistic to those of the putative class members. Further, Ms.

Stansbury's counsel are experienced wage and hour and class action litigators who will ably conduct the litigation and have done so through this point. In the Third Circuit, the competency of class counsel is presumed, and defendants carry the burden of proving the inadequacy of counsel. *See In re Cendant Corp.*, 264 F.3d at 233 & n. 18.

### 2.  The Proposed Settlement Class Should be Certified Under Rule 23(b)

Having demonstrated that each of the mandatory requirements of Rule 23(a) are met for settlement purposes only, Plaintiff now turns to consideration of the factors that independently justify class treatment of this action under Rule 23(b)(3)—predominance and superiority. Under Rule 23(b)(3), a class action should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 594, 623 (1997). Superiority requires the court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." *In re Prudential Ins.*, 148 F.3d at 316. Here, Plaintiff asserts that she readily meets both requirements.

### a.  Predominance

Common questions of law and fact readily predominate. When common issues present a significant aspect of the case, and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative basis rather than on an individual basis. *Local Joint Exec. Bd. v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001), cert. denied, 534 U.S. 973 (2001). Class and Collective Members' claims arise out of Defendants' alleged policies and procedures. Again, and as explained above, regardless of the applicable legal standard, the same legal standard will be applied class-wide. The central question

dispositive of all class members' claims is the sufficiency of an employer's vehicle reimbursements, and Plaintiff asserts that critical issue this eclipses any differences between class members that an employer can identify. It is Plaintiff's position that this presents common operative facts and common questions of law that predominate over any factual variations.

### b. Superiority

Finally, Plaintiff contends that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent class certification here, many putative Settlement Class Members would go uncompensated for Defendant's alleged wrongdoing. *See e.g., In re NFL Players Concussion Inj. Litig*., 821 F.3d 410, 435 (3d Cir. 2016), as amended (May 2, 2016) (finding superiority where individual proceedings "would result in years of costly litigation and multiple appeals, all the while delaying any potential recovery.").

There is no evidence that any class member desires to control his or her own claim, and any class member desiring that control may opt out of the Parties' settlement. Counsel for the Parties are unaware of any other pending litigation against Defendants entailing the same claims asserted in this case. For purposes of settlement, the class is manageable, it can easily be identified from Defendants' own records, a class action will foster judicial economy by avoiding duplicative litigation, and a class action will ensure that class members who are otherwise unaware that they possess a claim, or are unable to hire an attorney, will have their rights represented. These same considerations have warranted class certification in similar claims by pizza delivery drivers. See, e.g., *Perrin I*, 2013 U.S. Dist. LEXIS 181749, at *25-26; *Bass v. PJCOMN, Inc.*, No. 09-cv-01614-REB-MEH, 2011 U.S. Dist. LEXIS 58352, *10-11 (D. Colo. Jun. 1, 2011).

For their part, Defendants have agreed to the Settlement Agreement for settlement purposes

only and have denied liability and the suitability of the case [4]

## C.    Attorneys' Fees and Costs Provided in the Settlement are Appropriate

The Settlement Agreement provides that Plaintiff's counsel will recover their fees from the Settlement Amount. Prior to the final approval hearing and incorporated within their motion for final approval of the Settlement, Class Counsel will file a motion seeking an award of fees not to exceed 35% of the total settlement amount. The FLSA and Pennsylvania wage and hour laws each contain fee and cost shifting provisions.  Further, the Supreme Court has "recognized consistently that ... a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that where an employee prevails in an action, an award of attorneys' fees is mandatory. *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261 n.34 (1975); *Uphoff v. Elegant Bath, Ltd.,* 176

---

[4] Paragraph 59 of the Settlement Agreement provides:

No Admission of Liability and Inadmissibility of Settlement:

    (a)    Defendants deny liability to Plaintiff and the Settlement Class for any claim or cause of action. Defendants have denied and continue to deny each of the claims and contentions alleged by Plaintiff in the Action. Defendants have repeatedly asserted and continue to assert defenses thereto, and have expressly denied and continue to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Action.  Defendants also have denied and continue to deny the allegations that the Settlement Class Members have suffered damage or that the Settlement Class Members were harmed by the conduct alleged in the Action. By entering into this Agreement, Defendants in no way admit to the suitability of this Action for class or collective action litigation other than for purposes of settlement.

    (b)    Settlement of the Action and all acts performed or documents executed in furtherance of this Agreement or the settlement embodied herein: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants, or of the truth of any of the factual allegations in the Complaint filed in the Action or for any other purpose; (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative, or arbitral proceeding; and (c) are not, shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for class or collective action treatment other than for purposes of administering this Agreement.  The Parties understand and agree that this Agreement and any exhibit hereto are settlement documents and shall be inadmissible in any proceeding for any reason, except a proceeding to enforce the terms of this Agreement.

F.3d 399, 406 (7th Cir. 1999). The Court has discretion to approve reasonable fees as a percentage of a settlement fund. *Boeing Co.,* 444 U.S. at 478-79. The percentage-of-recovery method, which awards a fixed portion of the settlement fund to counsel, is the prevailing methodology used by courts in the Third Circuit in wage and hour cases. *Altnor v. Preferred Freezer Servs., Inc*., 197 F. Supp. 3d 746, 765 (E.D. Pa. 2016). "The court is required to thoroughly review the reasonableness of attorneys' fees in all class action settlements." *Bonett v. Educ. Debt Servs*., No. 01-cv-6528, 2003 U.S. Dist. LEXIS 9757, at *24 (E.D. Pa. May 9, 2003).

Here, the proposed award is reasonable, particularly in light of the nearly three years of litigation incurred. "In the [Third Circuit], the percentage of the recovery award in FLSA common fund cases ranges from roughly 20–45%." *Kapolka v. Anchor Drilling Fluids USA LLC*, No. 2:18-CV-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *20-21 (W.D. Pa Oct. 22, 2019) (citing *Mabry v. Hildebrandt*, No. CV 14-5525, 2015 U.S. Dist. LEXIS 112137, at *9 (E.D. Pa. Aug. 24, 2015); *see also Acevedo v. BrightView Landscapes, LLC*, No. CV 3:13-2529, 2017 U.S. Dist. LEXIS 163870, at *48-49 (M.D. Pa. Oct. 2, 2017) (same). Pennsylvania Courts have routinely granted fees of 35% in common fund settlements of hybrid wage claims. *See, e.g., Tompkins v. Farmers Ins. Esch.,* No. 5:14-cv3737, 2017 U.S. Dist. LEXIS 158478, at *28 (E.D. Pa. Sep. 27, 2017) (finding the requested 35% reasonable). Defendants do not oppose the request for attorney's fees and costs for purposes of settlement approval.

**D.    Named Plaintiff Should be Provided a Service Award**

Courts in this Circuit regularly approve incentive payments in class and collective action suits settling claims under the FLSA and Pennsylvania state law when such awards are authorized by the settlement and disclosed in the class notice. *See, e.g., Tompkins*, 2017 U.S. Dist. LEXIS 158478, at *30 (approving payment of $48,500 to 11 plaintiffs); *Devlin v. Ferrandino & Son, Inc*.,

No. 15-4976, 2016 U.S. Dist. LEXIS 170823, at *28-30 (E.D. Pa. Dec. 9, 2016) (payment of $7,500 to each named plaintiff and $1,000 to each opt-in plaintiff); *Schaub v. Chesapeake & Del. Brewing Holdings*, No. 16-756, 2016 U.S. Dist. LEXIS 157203, at *14-15 (E.D. Pa. Nov. 14, 2016) (approving service payment of $9,000 to named plaintiff); *Acevedo*, 2017 U.S. Dist. LEXIS 163870, at *44-46 (approving $5,000 to named plaintiff and $1,000 each to five opt-in plaintiffs).

The modest service award sought for the Named Plaintiff here (in the amount of $5,000.00) should be approved because she substantially assisted counsel in achieving this settlement on behalf of the class, participated in the discovery process directly, and this time and effort are deserving of a service award. She was responsible for initiating this action and provided guidance and assistance on numerous occasions to Plaintiff's counsel. She sought and retained experienced counsel, provided information necessary to prosecute the case, sat for a deposition, and had numerous phone calls and email communications with counsel. She also participated in the settlement process. Therein, Ms. Stansbury advocated for *all* of the delivery drivers. There is no question that the other delivery drivers have substantially benefited from these actions. Without such efforts, this case would not have been brought and this settlement would not have been achieved.  Importantly, Ms. Stansbury signed a general release as additional consideration for a service award attached as Exhibit B to the Settlement Agreement (Ex. 1). In light of these efforts, payment of a service award in the amount reflected in the attached Settlement Agreement is amply justified. Defendants do not oppose the requested service award.

### E.    The Proposed Notice and Claim Form Should be Approved

To approve a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).  Here, the Notice of settlement and the claim form will be mailed to class members at their last known

addresses, complying with the highest level of notice recognized by law.

The Notice explains in clear terms (1) the nature of the settlement and the claims released, (2) the minimum amount each class member has been allocated, and (3) the opportunity to include or exclude oneself or object to the settlement. The Notice informs class members of the terms and provisions of the settlement agreement; the relief the settlement will provide; the need to submit a claim form in exchange for enhanced recovery; the scope of the releases; the date, time and place of the final approval hearing; and the procedures and deadlines for submitting comments or objections. Additionally, the proposed class notice advises class members of the amount of fees and costs that Plaintiff's counsel seek and the amount of the proposed service award to be paid to the Named Plaintiff who substantially aided in the prosecution of the case. The proposed class notice is accurate and fully informs class members of the material terms of the settlement and their rights pertaining to it. The Court should approve the proposed form and method of class notice of first-class mail to each class member's last-known address.

## IV.    CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion and issue an Order that:

a)    grants Plaintiff leave to file an Amended Complaint adding class claims under Pennsylvania state law (a true and correct copy of Plaintiff's proposed First Amended Complaint is attached to the Forester Declaration as **Exhibit A**),

b)    certifies a Pennsylvania class action pursuant to Rule 23, for settlement purposes only, as set forth below,

c)    preliminarily finds that the Parties' settlement appears to be fair, reasonable and adequate as to members of the class and collective action, subject to any objections that may be

raised at the final fairness hearing and final approval of the settlement by this Court,

d)      appoints Plaintiff as Class Representative and appoints Forester Haynie PLLC and Weinhaus & Potashnick as Class Counsel,

e)      preliminarily approves the Parties' settlement,

f)      approves the proposed Class Notice and Claim Form and the process for requesting exclusion from the settlement as reasonable notice practicable under the circumstances and in full compliance with applicable law,

g)      directs the mailing of the Notice and Claim Forms by first-class mail to the Settlement Class Members, and

i)      schedules a hearing for final approval of the Parties' class action settlement agreement to occur at least 100 days following the Court's order granting preliminary approval of the settlement.

**FORESTER HAYNIE PLLC**
Colby Qualls
(admitted *pro hac vice*)
**FORESTER HAYNIE PLLC**
400 N. St. Paul Street, Suite 700
Dallas, Texas 75201
(214) 210-2100 phone
(214) 346-5909 fax

*/s/ Mark Potashnick*
Mark Potashnick
(admitted *pro hac vice*)
**WEINHAUS & POTASHNICK**
Admitted Pro Hac Vice
11500 Olive Blvd., Suite 133
St. Louis, MO 63141
markp@wp-attorneys.com
(314) 997-9150 ext. 2

Patrick Howard, Esquire
**SALTZ MONGELUZZI &
BENDESKY, P.C.**
120 Gibraltar Road, Suite 218
Horsham, PA 19044
Tel: (215) 496-8282
phoward@smbb.com

Attorneys for Plaintiff

FISHER & PHILLIPS LLP
*/s/ Kathleen McLeod Caminiti*
Kathleen McLeod Caminiti, Esquire
Admitted Pro Hac Vice
430 Mountain Avenue, Suite 303
Murray Hill, NJ 07974
(908) 516-1050 (phone)
(908) 516-1051 (facsimile)
kcaminiti@fisherphillips.com

Patrick M. Dalin, Esquire
100 N. 18th Street, 12th Floor
Philadelphia, PA 19103
(610) 230-2163 (phone)
(610) 230-2151 (facsimile)
pdalin@fisherphillips.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document will be served on all counsel of record via the Court's CM/ECF system.

*/s/ Patrick Howard*
Patrick Howard