## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELISSA STANSBURY, | : | |
| **Plaintiff** | : | No. 1:22-cv-00342 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| BARRICK ENTERPRISES, INC. and | : | |
| TODD BARRICK, | : | |
| **Defendants** | : | |

### MEMORANDUM

Before the Court are Plaintiff Melissa Stansbury ("Plaintiff") and Defendants Barrick

Enterprises, Inc. and Todd Barrick ("Defendants")' joint motion for preliminary approval of their

settlement agreement (Doc. No. 99) with a supporting brief (Doc. No. 100) and the parties'

motion for leave to substitute an exhibit (Doc. No. 101). For the reasons that follow, the Court

will grant the motions and schedule a fairness hearing.

## I.    BACKGROUND

On March 8, 2022, Plaintiff, on behalf of similarly situated current and former delivery

drivers, filed suit against Defendants alleging that Defendants violated the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 201, et seq., by using a flawed system to reimburse their delivery

drivers for the reasonably approximate costs of the business use of their personal vehicles. (Doc.

No. 1 ¶¶ 1–2.) On August 4, 2023, Plaintiff filed a Motion for Notice to Potential Plaintiffs and

For Conditional Certification of a Collective Class under the FLSA pursuant to 29 U.S.C. §

216(b).[1] (Doc. No. 35.) Plaintiff alleged that she and other similarly situated current and former

---

[1] The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract. Under the FLSA, employees have the right to bring a private cause of action on their own behalf and on behalf of "other employees similarly situated" for specified violations of the FLSA—this is known as a "collective action." See 29 U.S.C. § 216(b); Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 169–70 (1989).

delivery drivers were "illegally denied lawful minimum wage rates" due to improper

reimbursement by Defendants. (Doc. No. 1 at 1–2.) Plaintiff maintained that Defendants'

delivery drivers were improperly reimbursed due to a low mileage reimbursement rate ("as little

as $.31/mile") and no reimbursement for "out-of-pocket" automobile expenses. (Id. at 6.)

On March 28, 2024, after the parties briefed the motion, the Court granted Plaintiff's

Motion for Notice to Potential Plaintiffs and for Conditional Certification of a Collective Class

(Doc. No. 35) in part as to the conditional certification of the collective class, defining the

collective class as follows: "[a]ll persons who worked as delivery drivers for Defendants at any

time during the last three years prior to the filing of this Complaint [March 8, 2022] through the

entry of judgment at any of Defendants' Pennsylvania-based locations." (Doc. No. 66 ¶ 3.) The

Court denied Plaintiff's motion in part as to Plaintiff's request for the provision of Defendants'

employees' telephone numbers. (Doc. Nos. 65–66.) Subject to the limitations prescribed in the

Order and with Plaintiff's draft notice (Doc. No. 35-1) as the foundation for discussions, the

Court directed the parties to meet and confer to finalize the content and form of the notice (Doc.

No. 66 ¶ 7). On April 25, 2024, the parties filed a joint stipulation regarding the content and

form of notice, setting a notice period ("FLSA Notice Period") of seventy-five (75) days. (Doc.

Nos. 71, 71-1.) On June 5, 2024, the Court approved the stipulation in part as to the form of

notice and opt-in response deadline, but directed the parties to revise their proposed notice to

conform to the collective class defined by the Court's March 28, 2024 Order. (Doc. No. 72.)[2]

---

[2] In its June 5, 2024 Order, the Court observed that the parties stated that "[n]otice will be sent
to those employed by Defendants as delivery drivers in the period starting from three (3) years
prior to the date of the Court's March 28, 2024 Order" (Doc. No. 71 at 2)—a time period
contrary to the collective class approved and defined by the Court in its March 28, 2024 Order
and noted supra. See (Doc. No. 72 at 1 n.1). Further, the definition of the collective class in the
parties proposed form of notice (Doc. No. 71-1) differed from the Court's definition, and the
Court directed the parties to conform the proposed notice to the collective class definition as

Throughout the FLSA Notice Period, Plaintiff filed additional consents from opt-in plaintiffs. See (Doc. Nos. 73–85).

After the FLSA Notice Period concluded, the parties submitted a status report on September 11, 2024, requesting a stay of discovery until November 30, 2024 to allow the parties to mediate the dispute. (Doc. No. 86.) On September 12, 2024, the Court issued an Order staying discovery until November 30, 2024. (Doc. No. 87.)[3] Thereafter, on November 28, 2024, the parties filed a joint motion seeking to stay discovery for an additional period of time to complete mediation. (Doc. No. 92.) On December 2, 2024, the Court issued an Order granting the motion and staying discovery until December 30, 2024 as well as directing the parties to submit a joint case management plan by January 6, 2025. (Doc. No. 93.) On January 6, 2025, the parties filed a joint proposed case management plan notifying the Court that they reached a settlement on December 20, 2024 and requesting that the Court issue a briefing schedule for a preliminary approval motion. (Doc. No. 94.) The Court granted the motion directing the parties to file a joint motion for preliminary approval. (Doc. No. 95.)

On February 14, 2025, the parties filed the instant joint motion for preliminary approval of the settlement agreement (Doc. No. 99) with a supporting brief (Doc. No. 100). Subsequently, the parties filed a joint motion for leave to substitute an exhibit to the motion. (Doc. No. 101.) In their joint motion for preliminary approval and supporting brief, the parties request that the Court: (1) grant Plaintiff leave to file an amended complaint adding class claims under Pennsylvania state law; (2) certify a class action pursuant to Federal Rule of Civil Procedure 23

---

well. See (Doc. No. 72 at 1–2 n.2).

[3] Plaintiff filed additional consents after the Court stayed discovery, but the consents are dated and appear to be within the FLSA notice period (which was seventy-five (75) days from the date of the mailing of the consent). (Doc. Nos. 88–89.)

for settlement purposes only; (3) "preliminarily find[] that the parties' settlement appears to be fair, reasonable and adequate as to members of the class and collective action, subject to any objections that may be raised at the final fairness hearing and final approval of the settlement"; (4) "finally certify a FLSA collective action for settlement purposes only"; (5) appoint Plaintiff as Class Representative and appoint Forester Haynie PLLC and Weinhaus & Potashnick as Class Counsel; (6) preliminarily approve the parties' settlement; (7) "approve[] the proposed Class Notice and Claim Form and the process for requesting exclusion from the settlement as reasonable notice practicable under the circumstances and in full compliance with applicable law"; (8) direct the mailing of the Notice and Claim Forms by first-class mail to the settlement class members; and (9) schedule a hearing for final approval of the parties' class action settlement agreement to occur at least 100 days following preliminary approval of the settlement. (Doc. Nos. 99, 100 at 25–26.)  In connection with the joint motion, the parties attach their settlement agreement  ("Settlement Agreement") with signatures and proposed notice ("Notice") form (Doc. No. 101-1),[4] a declaration from Attorney J. Forester averring that, based on his experience in multi-plaintiff wage and hour claims, he is qualified to "fully and finally administer the settlement reached by the [p]arties in this matter" (Doc. No. 100-2 at 3), and Plaintiff's proposed amended complaint (Doc. No. 100-1 at 5–21).

Before addressing the proposed settlement, the Court will grant the parties' request for leave for Plaintiff to file an amended complaint adding class action claims under Pennsylvania state law.  See Fed. R. Civ. P. 15(a)(2) (stating that the Court should "freely give leave [to amend] when justice so requires").  Plaintiff's amended complaint asserts a FLSA claim (Count

---

[4]  The Court will grant the parties' motion for leave to substitute the Settlement Agreement that contains all required signatures.  (Doc. No. 101.)  The Court refers to Docket Number 101-1 as the operative Settlement Agreement and proposed Notice.

I), a class claim of violation of the Pennsylvania Minimum Wage Act ("PMWA"), 43 PA. STAT. AND CONS. STAT. ANN. § 333.101 et seq. (West 1968), for failure to reasonably reimburse automobile expenses (Count II), and a class action claim of violation of the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 PA. STAT. AND CONS. STAT. ANN. § 260.1 et seq. (West 1961), (Count III).  (Doc. No. 100-2 at 11–21.)  The Court finds that good cause exists to permit the filing of Plaintiff's amended complaint (Doc. No. 100-2 at 5–21), which asserts the class action claims as a component of the parties' settlement agreement (Doc. No. 101-1).  See Then v. Great Arrow Builders, LLC, No. 20-cv-00800, 2022 WL 562807, at *1 (W.D. Pa. Feb. 23, 2022) (granting a plaintiff's unopposed request for leave to amend its complaint to assert Rule 23 class action claims that are a component of the parties' settlement agreement).

## II.    LEGAL STANDARD

### A.    Class Action Settlement

"Review of a proposed class action settlement typically proceeds in two stages.  At the first stage, the parties submit the proposed settlement to the court, which must make 'a preliminary fairness evaluation.'"  In re Nat'l Football League Players' Concussion Inj. Litig., 961 F. Supp. 2d 708, 713-14 (E.D. Pa. 2014) (quoting MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004)).[5]  Upon a finding that the proposed settlement is preliminarily acceptable, the Court directs notice to all class members who would be bound by the settlement,

---

[5]  Section 21.632 of the Manual for Complex Litigation states that "[r]eview of a proposed class action settlement generally involves two hearings.  First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation.  In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties."  Here, the Court concludes that the submissions by Plaintiff, coupled with the numerous documents that are part of the comprehensive docket in this case, provide the Court with all of the information necessary for it to preliminarily evaluate the fairness of the proposed settlement, and accordingly, the Court finds a preliminary hearing unnecessary.

providing them an opportunity to be heard, object to, and potentially opt out of the settlement. See id. at 714.

Federal Rule of Civil Procedure 23(e) governs the settlement of class actions and the procedures that apply for review of a class action settlement. See Fed. R. Civ. P. 23(e) (setting forth the "procedures [that] apply to a proposed settlement, voluntary dismissal, or compromise"); see also In re Nat'l Football League Players Concussion Litig., 775 F.3d 570, 580–81 (3d Cir. 2014) (explaining that Rule 23(e) "provides the procedures applicable to settlements, voluntary dismissals, or compromises" in the context of class actions (citing Fed. R. Civ. P. 23(e))). Rule 23(e) imposes the following requirements as to the procedure applicable to a proposed settlement: (1) that the Court "direct notice in a reasonable manner to all class members who would be bound by the proposal"; (2) that, "[i]f the proposal would bind class members, the [C]ourt [] approve it only after a hearing and only on finding that it is fair, reasonable, and adequate"; (3) that "[t]he parties seeking approval [] file a statement identifying any agreement made in connection with the proposal"; (4) that "[i]f the class action was previously certified under Rule 23(b)(3), the [C]ourt may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so"; and (5) that "[a]ny class member may object to the proposal if it requires court approval under this subdivision[,]" and that "[t]he objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specific the grounds for the objection." See Fed. R. Civ. P. 23(e).

Federal Rule of Civil Procedure 23(e)(2) describes the factors the Court must consider in determining whether a settlement is fair, reasonable, and adequate:

> **(A)** the class representatives and class counsel have adequately represented the class;

**(B)** the proposal was negotiated at arms' length;

**(C)** the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (vi) any agreement required to be identified under Rule 23(e)(3); and

**(D)** the proposal treats class members equitably relative to each other.

See Fed. R. Civ. P. 23(e)(2).

A court's decision to preliminarily approve a proposed class action settlement is not a commitment to approve the final settlement, but instead "is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'" See Gates v. Rohm & Haas Co., 248 F.R.D. 434, 438 (E.D. Pa. 2008) (quoting Smith v. Prof. Billing & Mgmt. Servs., Inc., No. 06-cv-4453, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007) (citations omitted)). A preliminary approval determination "establishes an initial presumption of fairness." See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig., 55 F.3d 768, 785 (3d Cir. 1995) (citing HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (3d ed. 1992)). Further, the preliminary approval process entails a determination of "whether notice to the [c]lass and the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile." See WILLIAM RUBENSTEIN, ET AL., NEWBERG ON CLASS ACTIONS § 13:13 n.9 (5th ed. 2011) (citing Klug v. Watts Regulator Co., Nos. 8:15-cv-61, 8:16-cv-200, 2016 WL 7156478, at *6 (D. Neb. Dec. 7, 2016)).

## B.    Conditional Certification of the Settlement Class

Additionally, if "the Court has not already certified a class, the Court must also determine whether the proposed settlement class satisfies the requirements of Rule 23." See Gates, 248 F.R.D. at 439 (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997)). In this

context, the Court "should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." See MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004) (citing id. § 21.22).  The Court may conditionally certify a class for settlement purposes, "leaving the final certification decision for the fairness hearing."  See Gates, 248 F.R.D. at 439.

Rule 23(a) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if" the following requirements are met:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

See Fed. R. Civ. P. 23(a).  As noted supra, the Court must also determine that the action satisfies at least one subsection of Rule 23(b).  See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011).  In instant case, Plaintiff relies on Rule 23(b)(3), which is applicable when "the [C]ourt finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  See Fed. R. Civ. P. 23(b)(3).

### C.    FLSA Collective Action

Under the FLSA, a collective action may be brought "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated."  See 29 U.S.C. § 216(b).  "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  Id.  A collective action under the FLSA is "fundamentally different" from a class action under Federal Rule of Civil Procedure 23.  See Halle v. West Penn Allegheny Health Sys.,

842 F.3d 215, 222–23 (3d Cir. 2016) (citing <u>Genesis Healthcare Corp. v. Symczyk</u>, 569 U.S. 66, 74 (2013) ("<u>Genesis</u>")).  In a complaint containing FLSA allegations, "the mere presence of the allegations does not automatically give rise to the kind of aggregate litigation provided for in [Federal] Rule [of Civil Procedure] 23.  Rather, the existence of a collective action depends upon the affirmative participation of opt-in plaintiffs."  <u>See id.</u> at 224.

The United States Court of Appeals for the Third Circuit ("Third Circuit") has articulated a two-step process for certification of collective actions under the FLSA.  <u>See</u> <u>Zavala v. Wal-Mart Stores, Inc.</u>, 691 F.3d 527, 536 (3d Cir. 2012).  At the first step, conditional certification, a plaintiff must make a "modest factual showing" to support a "factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members."  <u>See</u> <u>Zavala</u>, 691 F.3d at 536 n.4 (citing <u>Symczyk v. Genesis Healthcare Corp.</u>, 656 F.3d 189 (3d Cir. 2011), <u>rev'd on other grounds</u>, <u>Genesis</u>, 569 U.S. at 66).  Certification of a collective class is not final until the second step, at which time the Court must determine whether plaintiffs who have opted to join the action following conditional certification are similarly situated to the named plaintiffs under the FLSA.  <u>See</u> <u>Halle</u>, 842 F.3d at 226.  Courts determine whether the plaintiff and opt-in plaintiffs are similarly situated by considering all relevant circumstances, including but not limited to:

> Whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment.  Plaintiffs may also be found dissimilar based on the existence of individualized defenses . . . .  This list is not exhaustive, and many relevant factors have been identified.  <u>See</u> 45C Am.Jur.2d <u>Job Discrimination</u> § 2184 (listing 14 factors to be considered in determining whether proposed collective action plaintiffs are "similarly situated" under the ADEA).

<u>See</u> <u>Zavala</u>, 691 F.3d at 536–37.

"When parties present to the district court a proposed [FLSA] settlement, the district court may enter a stipulated judgment if it determines that the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching." Cuttic v. Crozer-Chester Med. Ctr., 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) (internal quotation marks omitted). As to settlement of an FLSA claim, the Court will approve it "if it settles a bona fide dispute and (1) the settlement is fair and reasonable for the employee(s), and (2) the agreement furthers the FLSA's implementation in the workplace." See Solkoff v. Pa. State Univ., 435 F. Supp. 3d 646, 652 (E.D. Pa. 2020) (quoting Howard v. Phila. Hous. Auth., 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016)).

## III. DISCUSSION

The Court addresses Plaintiff's state law claims of failure to reasonably reimburse automobile expenses in violation of the PMWA and violation of the PWPCL, asserted as a class action pursuant to Federal Rule of Civil Procedure 23, as well as Plaintiff's claim under the FLSA. The Court first examines whether the proposed settlement class satisfies the requirements of Rule 23 before reviewing the Settlement Agreement to determine whether it should be preliminarily approved and whether the Settlement Agreement properly resolves the FLSA claim.

### A. Preliminary Certification of Class Action

#### 1. Proposed Settlement Class Definition

The parties define the proposed "Class Members", "Settlement Class Members", the "Class", or the "Settlement Class" as follows:

Defendants' drivers who received mileage reimbursements from (a) the earlier of 3 years prior to actual opt-in date or December 20, 2021 through (b) the date of

Preliminary Approval of Settlement.

(Doc. No. 100 at 3.)

The Third Circuit has clarified that it views Rule 23 as containing an "ascertainability" requirement that must be met for class certification. See Byrd v. Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015) (imposing an "ascertainability" requirement under Rule 23 and explaining that "[t]he ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is defined with reference to objective criteria, and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition") (internal quotation marks and citation omitted)).

Upon review of the parties' proposed definition, the Court finds that it meets the Third Circuit's Rule 23 "ascertainability" requirement for purposes of this preliminary determination. Here, the proposed Class is defined by "objective" and "administratively feasible" criteria, consisting of all "Defendants' drivers who received mileage reimbursements" during the Class period. Accordingly, the Court proceeds to its examination of whether the requirements set forth in Rule 23(a)(1) through (a)(4) are satisfied.

## 2. Numerosity

The numerosity requirement is satisfied if "the class is so numerous that joinder of all members is impracticable." See Fed. R. Civ. P. 23(a)(1). The Court "presume[s] joinder impracticable when the potential number of class members exceeds forty." See Allen v. Ollie's Bargain Outlet, 37 F.4th 890, 896 (3d Cir. 2022) (citing Mielo v. Steak'n Shake Operations, Inc., 897 F.3d 467, 483-84 (3d Cir. 2018)). Here, the parties represent that the Settlement Class consists of several hundred current and former delivery drivers. (Doc. No. 100 at 15.) Upon consideration of this figure, the Court finds that, for purposes of preliminary certification, the

numerosity requirement is met.

### 3. Commonality

The second element of Rule 23(a) requires that "there are questions of law or fact common to the class." See Fed. R. Civ. P. 23(a)(2). "A putative class satisfies Rule 23(a)'s commonality requirement if 'the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" Rodriguez v. Nat'l City Bank, 726 F.3d 372, 382 (3d Cir. 2013) (quoting Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)). "Their claims must depend upon a common contention . . . that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." In re Nat'l Football League Players Concussion Injury Litig., 821 F. 3d 410, 427 (3d Cir. 2016) (omission in original) (quoting Dukes, 564 U.S. at 350). The parties assert that "all of the delivery drivers' claims arise out of the same legal theory (minimum wage violations resulting from under-reimbursed vehicle costs) and the same questions of law and fact . . ." under federal and Pennsylvania law. (Doc. No. 100 at 16.) Plaintiff asserts that either one of two recognized legal theories applies to all claims and the central question is what reimbursement rate should have been applied. (Id. at 17.) The first theory is that Defendants "failed to reimburse a 'reasonable approximation' of the cost of driving personal vehicles for pizza delivery," and the second is that Defendants "should have reimbursed at the IRS standard business mileage rate." (Id.) For purposes of preliminary certification, the Court finds that the commonality requirement is satisfied. See Rodriguez, 726 F.3d at 383 (stating that "there may be many legal and factual differences among the members of a class, as long as all were subjected to the same harmful conduct by the defendant") (citing Baby Neal, 43 F.3d at 56).

### 4.    Typicality

Pursuant to Rule 23(a)(3)'s typicality requirement, "the claims or defenses of the

representative parties [must be] typical of the claims or defenses of the class."  See Fed. R. Civ.

P. 23(a)(3).  In the Third Circuit, this requirement has been recognized as having a "low

threshold."  See In re Nat'l Football League Players Concussion Litig., 821 F.3d at 428 (quoting

Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 182–83 (3d Cir. 2001)).

Accordingly, "[e]ven relatively pronounced factual differences will generally not preclude a

finding of typicality where there is a strong similarity of legal theories[] or where the claim arises

from the same practice or course of conduct."  See id. (quoting In re Prudential Ins. Co. Am.

Sales Pract. Litig. Agent Actions, 148 F.3d 283, 311 (3d Cir. 1998)).  Here, Plaintiff asserts that

the typicality requirement has been satisfied because "[s]he, just like all of the other delivery

drivers, was not reimbursed for all vehicle expenses pursuant to Defendants' company-wide

reimbursement method, which caused minimum wage violations."  (Doc. No. 100 at 18–19.)  For

purposes of preliminary certification, the Court finds that Rule 23(a)'s typicality requirement is

met.

### 5.    Adequacy of Representation

Rule 23(a) also imposes a fourth requirement: that "the representative parties will fairly

and adequately protect the interests of the class."  See Fed. R. Civ. P. 23(a)(4).  In order to

determine whether this requirement has been met, the Court must examine "(1) whether the

representatives' interests conflict with those of the class and (2) whether the class attorney is

capable of representing the class."  See Newton, 259 F.3d at 185 (citing Gen. Tel. Co. of Sw. v.

Falcon, 457 U.S. 147, 157 (1982); Barnes v. Am. Tobacco Co., 161 F.3d 127, 141 (3d Cir.

1998)).  Having reviewed the record in this case, the Court is persuaded that there is no conflict

of interest between Plaintiff and the members of the Settlement Class, and that the evident

competence and experience on the part of Plaintiff's counsel (Doc. No. 100-2) satisfies Rule

23(a)'s requirement as to adequacy of representation.

### 6.  Rule 23(b)(3)

As noted <u>supra</u>, in addition to examining whether the four requirements of Rule 23(a)

have been met, the Court must determine whether the proposed Settlement Class "satisf[ies] at

least one of the three requirements listed in Rule 23(b)."  <u>See</u> <u>Dukes</u>, 564 U.S. at 345.  In the

instant case, the parties refer to Rule 23(b)(3), which governs cases where "the questions of law

or fact common to class members predominate over any questions affecting only individual

members," and when "a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy."  <u>See</u> Fed. R. Civ. P. 23(b)(3).

The first inquiry—referred to as the predominance inquiry—examines "whether the

defendant's conduct was common as to all of the class members, and whether all of the class

members were harmed by the defendant's conduct."  <u>See</u> <u>Sullivan v. DB Invs., Inc.</u>, 667 F.3d

273, 298 (3d Cir. 2011).  According to Plaintiff, this requirement is met because the claims "arise

out of Defendants' alleged policies and procedures," and "regardless of the applicable legal

standard, the same legal standard will be applied class-wide."  (Doc. No. 100 at 20.)  Plaintiff

further maintains that "[t]he central question dispositive of all class members' claims is the

sufficiency of an employer's vehicle reimbursements," and that "critical issue [] eclipses any

differences between class members that an employer can identify."  (<u>Id.</u> at 20–21.)  The Court is

satisfied that, for purposes of preliminary certification, there are common questions surrounding

Defendants' vehicle reimbursement policies and practices such that these questions predominate

over any individual questions of law or fact in this case.  <u>See</u> <u>Sullivan</u>, 667 F.3d at 297–98

(stating that that "the focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct").

The second focal point for purposes of Rule 23(b)(3)—the superiority inquiry—requires the Court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication."  See In re Cmty. of N. Va. Mortg. Lending Practs. Litig., 795 F.3d 380, 409 (3d Cir. 2015) (quoting In re Cmty. Bank of N. Va., 418 F.3d 277, 309 (3d Cir. 2005)).  As to this prong, Plaintiff asserts that absent class certification, many Settlement Class Members would go uncompensated, and that there is "no evidence that any class member desires to control his or her own claim, and any class member desiring that control may opt out of the [p]arties' settlement."  (Doc. No. 100 at 21.)  Further, Plaintiff represents that counsel for the parties are "unaware of any other pending litigation against Defendants entailing the same claims asserted in this case" and that,

> [f]or purposes of settlement, the class is manageable, it can easily be identified from Defendants' own records, a class action will foster judicial economy by avoiding duplicative litigation, and a class action will ensure that class members who are otherwise unaware that they possess a claim, or are unable to hire an attorney, will have their rights represented.

(Id.)  Having considered these arguments, the Court agrees that in this case, resolution of this case through class action settlement presents "a more desirable outcome for the class than individualized litigation."  See In re Gen. Motors Corp., 55 F.3d at 796.

In light of the Court's conclusion that the requirements set forth in Rules 23(a) and 23(b)(3) have been met on a preliminary basis, the Court will preliminarily certify the proposed Settlement Class.  Accordingly, the Court turns to an analysis of whether preliminary approval of the proposed Settlement Agreement is appropriate.

## B.    Preliminary Approval of Settlement Agreement

As noted by the parties and detailed above, Rule 23(e)(2), as amended in 2018, sets forth four factors to be considered by the Court in determining whether a settlement is fair, reasonable, and adequate.  The 2018 Advisory Committee's Note to Rule 23 clarifies that these factors are the "core concerns" animating a determination as to the fairness of a proposed settlement but do not replace or displace other factors traditionally applied by courts in conducting such an assessment.  See Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.  In Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975), the Third Circuit articulated a list of nine (9) factors to consider in connection with a class action settlement: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  See id. (cleaned up) (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974)).[6] These factors significantly overlap with the Rule 23(e)(2) factors; accordingly, the Court

---

[6]  The Third Circuit expanded on the Girsh factors in In re Prudential Ins. Co. Am Sales Prac. Litig. Agent Actions, 148 F.3d 283, 323 (3d Cir. 1998).  The Prudential factors are: (1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; (2) the existence and probable outcome of claims by other classes and subclasses; (3) the comparison between the results achieved by the settlement for the individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; (4) whether class or subclass members are accorded the right to opt out of the settlement; (5) whether any provisions for attorneys' fees are reasonable; and (6) whether the procedure for processing individual claims under the settlement is fair and reasonable.  See id.

addresses each of the Rule 23(e)(2) factors below while noting the Girsh factors, where applicable.

### 1.    Whether Plaintiff and Her Counsel Have Adequately Represented the Settlement Class

The Court agrees with the parties' characterization of Plaintiff as an adequate representative of the Class and that the interests of other members of the Class will be "fairly and adequately protected" by her counsel who have "extensive experience prosecuting complex wage and hour, employment, and class action litigation." (Doc. No. 100-2 at 3 ¶ 6, 15 ¶ 45.) This litigation has been pending for over three (3) years and has involved: an earlier attempt at mediation (Doc. Nos. 9–10, 16), extensions of discovery due to additional opt-in plaintiffs (Doc. Nos. 23–24, 40), lengthy briefing on the motion for conditional certification of the collective class and its related exhibits (Doc. Nos. 35–37, 44, 46–68), and the parties' second participation in the mediation process and ultimate negotiation of the Settlement Agreement. A review of the docket in this matter reflects the appropriate advocacy and competence of Plaintiff as representative of the Settlement Class and her counsel. Accordingly, this factor weighs strongly in favor of approval of the Settlement Agreement.[7]

### 2.    Whether the Settlement Is the Result of Good Faith, Arm's Length Negotiations

As noted supra, the parties attempted mediation early on in this case with the Hon. F. Bradford Stillman on October 26, 2022. (Doc. Nos. 9–10, 16.) Later, after the FLSA collective class was conditionally certified, notice was given to the putative class, and the notice period ended (Doc. Nos. 65–66, 71–72), the parties requested a stay of discovery to engage in a second

---

[7] The Court notes that this factor overlaps with the third Girsh factor—the stage of the proceedings and amount of discovery completed.

mediation with Judge Stillman (Doc. No. 86). The parties state that they engaged in three (3) successive mediations with Judge Stillman that resulted in the Settlement Agreement. (Doc. Nos. 100 at 3; 101-1 at 6 ¶ 31.) The parties aver that Judge Stillman has experience in mediating wage and hour class and collective actions. (Doc. No. 100 at 2, 11.)

The above sequence of events demonstrates that the settlement reached between the parties resulted from a good faith, arm's length negotiation conducted with the assistance of a mediator. See Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (stating that "the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests"). In addition, the Court finds it apparent that Plaintiff as well as Defendants have been ably represented by counsel experienced in this type of litigation. See (Doc. No. 100 at 2) (stating  counsel "have previously represented Domino's franchisees and delivery drivers in case entailing similar claims, in which [] similar settlement structures were approved"). The Court therefore concludes that the proposed Settlement is the result of good faith, arm's length negotiations, and accordingly, this factor weighs in favor of approval. The Court turns to an assessment of the terms of the proposed Settlement.

### 3.    Whether the Relief Provided to the Class Is Adequate[8]

Rule 23(e) provides four subfactors for the Court to consider in connection with a determination as to whether relief provided to the Class is adequate, as follows:

(i) the costs, risks, and delays of trial and appeal; (ii) the effectiveness of any

---

[8]  The Court notes that this factor overlaps with the eighth and ninth Girsh factors, which are: "the range of reasonableness of the settlement fund in light of the best possible recovery," and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  In addition, it relates to the first Girsh factor, which considers the "complexity, expense, and likely duration of the litigation," and the fourth and fifth Girsh factors, which assess the risks of establishing liability and damages.

proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

See Fed. R. Civ. P. 23(e)(2)(C).

The parties represent that:

[t]he settlement considers the possible value of the claims balanced against the risk, effort, expense and delay of further litigation and possible appeals. Notably, unlike the vast majority of pizza companies, Defendants' data shows that they limited their liability by providing company vehicles and by paying wages considerably greater than the state and federal minimum wage rate. Plaintiff considered those anomalies. In sum, Plaintiff recovered more than half of the estimated maximum actual damages calculated by applying a $0.55 per mile reimbursement rate to Defendants' work time, pay, mileage and reimbursement records.

(Doc. No. 100 at 3.)

The Court notes that the proposed Settlement establishes a settlement fund "inclusive of payments to the putative class, attorneys' fees, litigation and mediation costs, administration costs, and a modest service award," and the maximum settlement amount that Defendants could be obligated to pay is $160,000. (Doc. No. 100 at 3–4; 101-1 at 4 ¶ 17, 7 ¶ 34.) The proposed Settlement Agreement provides the following method of calculation:

- For each Settlement Class Member, the total number of his/her recorded miles making deliveries for Defendants multiplied by the IRS rate, with a[n] offset for wages paid over the minimum wage, based on Defendants' data during the Class Period shall be his/her "Individual Amount." The aggregate of all Individual Amounts among all Settlement Class Members shall be the "Class Amount." For the purposes of calculating the payment ratio only, miles shall be valued at the IRS rate.

- Each Settlement Class Member's Individual Amount shall be divided by the Class Amount to obtain his/her "Payment Ratio."

- Each Settlement Class Member's Payment Ratio shall be multiplied by the Net Settlement Amount to arrive at his/her Potential Settlement Payment. Each Settlement Class Member who files a valid and timely claim form, shall be eligible for a payment based on their Payment Ratio applied to the Net

19

Settlement Fund, sometimes referred to as "pro rata share" of the Net Settlement Fund, with a minimum payment of $30.00.

- Each Settlement Class Member who does not file a Claim Form and does not exclude themselves shall receive a payment of $30.00.

(Doc. No. 101-1 at 8–9.)  The settlement payments will be treated as non-taxable payments in reimbursement for incurred job expenses.  (Id. at 10.)  The Court addresses each of the four Rule 23(e)(2)(C) factors in turn.

With regard to the costs and risks of trial and appeal, the Court notes that the substantial benefit of the $160,000 maximum recovery must be weighed against the risks posed by continued litigation.  Here, those litigation risks and costs include the completion of discovery, securing class certification, defending motions for summary judgment, and defending expert opinions, all before proceeding to trial.  The parties note that "[b]y reaching a favorable settlement now, the [p]arties have avoided the need to resolve significant and time-consuming motions, expensive experts, and discovery issues and the resources a jury trial would have entailed." (Doc. No. 100 at 10.)  Absent this settlement, the case is likely to continue to be litigated for several years and cost thousands of dollars to prosecute.  In addition, the parties recognize that the law is unsettled as to whether Defendants were required to pay the IRS rate or to reimburse a "reasonable approximation" of drivers' expenses, and the proposed Settlement guarantees that the drivers will recover as "there is no guarantee Plaintiff will be successful at trial." (Doc. No. 100 at 12.)  Additionally, there is the risk of denial of class certification, and even if the class was certified, class certification is susceptible to appeal.  (Id.)  As noted by the parties, this Settlement avoids those risks while at the same time providing a substantial recovery for the Settlement Class, which the Court agrees is "the most prudent course." (Id.)

Regarding the method of processing claims and distributing relief to the members of the

class, the parties propose CAC Services Group, LLC, as the Settlement Administrator.  (Doc. Nos. 100 at 5; 101-1 at 36.)  The parties represent that within ten (10) calendar days after the filing of the instant motion, Defendants provided the Settlement Administrator the "names, last known addresses, last known telephone numbers, and the last four digits of the social security numbers of the Class Members, along with data indicating the number of miles driven for each Class Member using their personal vehicle during the Class Period, as well as offsets for payments above minimum wage"—referred to as the "Final Class Data List."  (Doc. No. 101-1 at 13 ¶ 43.)  This data "shall be based on Defendants' payroll and/or other business records and shall be used to prepare the [Class Action Fairness Act] notices."  (Id.)  Pursuant to Section 4 of the Settlement Agreement, the Settlement Administrator sent the proper notices to the appropriate federal and state officials in accordance with the Class Action Fairness Act within twenty (20) days after the instant motion was filed.  (Id. at 12 ¶ 42.)  The Settlement Administrator will consult the National Change of Address Registry once they have received the Final Class Data List.  (Id. at 13.)  The Court recognizes that the purpose of this procedure is to distribute the funds to Class Members based on the calculation above and using the information provided by Defendants.

Further, the Notice's requirement that Class Members file a Claim Form is standard and appropriate in this case because, as explained by the Notice, submission of the Claim Form constitutes consent on behalf of the Class Member (Doc. No. 101-1 at 30–31, 33); in addition, it permits a Class Member the ability to object to the settlement and offers Class Members the option to be heard orally at the Final Fairness Hearing before the Court (id. at 33–34).  The Notice permits Class Members to submit Claim Forms by mail, fax, or email to the Settlement Administrator.  (Doc. No. 101-1 at 32.)

With respect to the pending FLSA claim,[9] if the Court determines that the settlement concerns a bona fide dispute, "it will conduct a two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employee(s), and (2) the agreement furthers the FLSA's implementation in the workplace." See Howard, 197 F. Supp. 3d at 777.  Preliminary approval is appropriate where "the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."  See Then, 2022 WL 562807, at *2 (preliminarily approving a FLSA and state law class action settlement). As explained by the parties, the proposed settlement is a reasonable resolution of the bona fide dispute:

> Plaintiff alleged that Defendants under[-]reimbursed the delivery drivers' automobile expenses, causing minimum wage violations.  Defendants deny

---

[9]  As noted supra, the FLSA collective certification process occurs in two stages: a conditional certification at the outset of a case and a final certification at the close of discovery.  See Zavala, 691 F.3d at 535–37.  In its March 28, 2024 Memorandum and Order, the Court conditionally certified the FLSA collective class of "[a]ll persons who worked as delivery drivers for Defendants at any time during the last three years prior to the filing of this Complaint [March 8, 2022] through the entry of judgment at any of Defendants' Pennsylvania-based locations."  (Doc. Nos. 65–66.)  Here, the parties in their motion request that the Court "finally certify a FLSA collective action for settlement purposes."  (Doc. No. 99 at 2.)  At this stage of the FLSA collective action, "the named plaintiffs bear the burden of showing that the opt-in plaintiffs are 'similarly situated' to them for FLSA purposes.  See Halle, 842 F.3d at 226 (citing Zavala, 691 F.3d at 537).  "Being 'similarly situated'. . .  means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA."  Zavala, 691 F.3d at 538.  The opt-in plaintiffs (the "Opt-in Plaintiffs") (Doc. Nos. 11, 22, 73–85, 88–89) in this case are similarly situated to Plaintiff because they all were or are employed in the same position (delivery driver) at one or more of Defendants' locations, they seek the same form of relief, and they all were reimbursed by Defendants for their delivery driving.  Further, they are or were subjected to a common employer practice of mileage reimbursement by Defendants that, if proven, would help demonstrate a violation of the FLSA.  See Zavala, 691 F.3d at 538; see also Waters v. Pizza to You, LLC, No. 19-cv-00372, 2022 WL 404614, at *2 (S.D. Ohio Feb. 9, 2022) (certifying a FLSA collective action for purposes of settlement in a case concerning reimbursement of delivery drivers); Leap v. Yoshida, No. 14–cv–03650, 2016 WL 1730693, at *6 (E.D. Pa. May 2, 2016) (certifying a FLSA collective action where the waiter-plaintiffs advanced the same claims and sought the same relief as to the defendant's various alleged tip-related wage violations).  Therefore, the Court will certify the FLSA collective class for purposes of settlement only.

> Plaintiff's substantive allegations, assert that the delivery drivers were reasonably reimbursed for vehicle costs, and contend that the delivery drivers were compensated at or above the applicable minimum wage.  Further Defendants contested the validity of collective treatment of this matter and resolution was only reached following three successive mediations.  Thus, the claims were actually in dispute.

(Doc. No. 100 at 7–8.)  The proposed settlement is also fair and reasonable because it represents a "classic compromise" and the settlement furthers the statute's purpose of restoring "minimum wage payments to low-wage earning employees.  (Id. at 8.)

The Court notes that the Opt-In Plaintiffs have already opted into the FLSA claim, which is released under the Settlement Agreement.  See (Doc. No. 101-1 at 18–19 ¶ 51); 29 U.S.C. § 216(b) (stating that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought"); Knight v. Pub. P'ships, LLC, No. 19-cv-02461, 2020 WL 3791562, at *3, (E.D. Pa. July 7, 2020) (observing that, "in a Rule 23 class action, a prospective party plaintiff is automatically included in the class unless he opt[s]-out of the class upon notice of the action," but "prospective class members in a FLSA collective action must affirmatively opt-in to be bound by any judgment") (internal quotation marks omitted).  The release in the Settlement Agreement and in the proposed Notice states that the Settlement Class agrees to:

> release and forever discharge Defendants, and each of their former and present predecessors, successors, parents, subsidiaries, franchisors, insurers, attorneys and affiliates, whatever their current or former legal names or legal entity status, and each of their respective current and former owners, officers, directors, employees, partners, shareholders, attorneys and agents and any other successors, assigns, or legal representatives ("Released Parties"), from any and all claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, accruing during the Class Period, arising under the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment and Collection Law, common law claims for unjust enrichment, or including any similar state, municipal, or local laws, which arise out of, are based on, or encompass facts that were asserted in the Action, including claims such as expense reimbursement claims; minimum wage claims, meal and rest break claims; dual job/80-20 claims;

tip credit claims; and notification, posting and record claims; and/or any related claims for liquidated damages, penalties, attorneys' fees and costs, penalties and interest; any and all common law and equitable claims (including claims for breach of contract, unjust enrichment, quantum meruit, etc.); and any and all derivative claims relating to unpaid wages, minimum wage compensation, reimbursement of vehicle costs of overtime ("Released Claims").    Additionally, the Class Representative, Opt-in Plaintiffs, and any Participating Class Member who files a valid Claim Form, including Late Claimants, shall release any claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et. seq.  Without limiting the generality of the foregoing, the claim preclusion effect of this Settlement, and the judgment thereon, for res judicata purposes shall be co-extensive with this release of claims.

(Doc. No. 101-1 at 18–19 ¶ 51.)  The parties' proposed Notice states that if the individual does nothing, they only release claims "under Pennsylvania state law for the Class Period and may still be able to bring claims for violation of federal law [(the FLSA)] at a later time."  (Id. at 33.) The release distinguishes between a Class Member (who is not required to file anything) and a "Participating Class Member who files a valid Claim Form."  See (Doc. No. 101 at 19 ¶ 51.)

The ultimate concern with hybrid FLSA and state law class actions is that a class member is releasing their FLSA claim merely by being a class member, and that there is "inherent uncertainty in the law regarding whether Rule 23 certification is required in hybrid FLSA and state-law wage actions . . . [w]hile FLSA collective actions require potential plaintiffs to affirmatively opt-in, see 29 U.S.C. § 216(b), Rule 23 class actions typically bind all class members who do not opt out."  See Matthews v. Phila. Corp. for Aging, No. 22-cv-04632, 2025 WL 992198, at *1 n.1 (E.D. Pa. Apr. 1, 2025).  The Third Circuit has not spoken on this issue,[10] but other Circuits have explicitly allowed for opt-out Rule 23 class action settlements and if a potential class member did not opt-out, then they properly released their FLSA claims.  See

---

[10] "The Third Circuit does permit, . . . hybrid cases—an FLSA collective action and a Rule 23 class on the state law claim," for purposes of jurisdiction.  See Steahle v. CarGroup Holdings, LLC, No. 24-cv-01447, 2025 WL 887808, at 3 n.1 (citing De Ascencio v. Tyson Foods, Inc., 342 F.3d 301, 306 (3d Cir. 2003) and Knepper v. Rite Aid Corp., 675 F.3d 249, 257 (3d Cir. 2012)).

Richardson v. Wells Fargo Bank, N.A., 839 F.3d 442, 451 (5th Cir. 2016) (stating that by not opting-out, potential class members became bound by the settlement terms, including the release of FLSA claims).  In the United States District Court for the Western District of Pennsylvania, after the conditional certification of a FLSA collective and notice period, see Copley v. Evolution Well Servs. Operating, LLC, No. 20-cv-01442, 2022 WL 295848 (W.D. Pa. Jan. 31, 2022), and at the preliminary approval stage, the district court reasoned that "[b]ecause the Third Circuit has held that final judgments in class action cases have a preclusive effect on other claims, it would likely find that such releases of FLSA opt-in claims are acceptable," see Copley v. Evolution Well Servs. Operating, LLC, No. 20-cv-01442, 2023 WL 1878581, at *7 (W.D. Pa. Feb. 10, 2023) (citing In re Prudential Ins. Co. of Am. Sales Prac. Litig., 261 F.3d 355, 366 (3d Cir. 2001)).  On that basis, the district court found that "the proposed notice explains the opt-out process, such that members may preserve any claim, which would include FLSA claims, they might pursue separately."  See Copley, 2023 WL 1878581, at *7.  In another case, the United States District Court for the Eastern District of Pennsylvania did not preliminarily approve a hybrid FLSA and state class action settlement because the settlement "effectively does something that Congress chose not to allow: it settles FLSA claims on a class-wide basis."  See Lundeen v. 10 W. Ferry St. Operations LLC, No. 24-cv-00109, 2024 WL 4466678, at *1 (E.D. Pa. Oct. 9, 2024).[11]  In Lundeen, all class members would release their FLSA claims unless they explicitly opted-out.  See id. at *3 (stating that the settlement would "tell every class member that if he wants to preserve his right to opt into a claim under the FLSA, he must forego his right to participate in a settlement class").

---

[11]  Similar to the instant case, the parties in Lundeen had already completed the conditional certification of the FLSA collective and had a FLSA notice period that garnered ten (10) opt-in plaintiffs.  See Lundeen, 2024 WL 4466678, at *1.

Here, unlike in <u>Lundeen</u>, the parties propose that the Class Members only release their FLSA claims if they file a Claim Form. <u>See</u> (Doc. No. 101-1 at 33); <u>Matthews v. Phila. Corp. for Aging</u>, 1:22-cv-04632-JFM (E.D. Pa. Dec. 13, 2024), ECF No. 70-3 at 13 n.9 (acknowledging in their submission to the district court that "[a]s Judge Wolson [in <u>Lundeen</u> recently observed, 'reasonable minds can disagree' about whether Rule 23 class members can waive FLSA claims without opting-in to the litigation," but that this legal issue is not implicated by the settlement that participating class members "will have formally opt-in to the litigation"). In the instant case, <u>Lundeen</u> is not implicated because here, Class Members only release their FLSA claims if they submit a Claim Form. <u>See</u> <u>Lunemann v. Kooma III LLC</u>, No. 23-cv-03704, 2024 WL 2133803, at *2 (E.D. Pa. May 13, 2024) (considering both FLSA and Rule 23 class action claims and approving a settlement release because "the opt-in FLSA claims may be properly released through the opt-out class settlement because the parties provided a clear and comprehensive explanation of the release in the proposed notice"); <u>see also</u> <u>Matthews</u>, 2025 WL 992198, at *1 n.1 (finding that, at final approval of settlement, "the settlement class effectively operates as an opt-in collective, because it affects only those who affirmatively return consent forms"). Based on the parties' proposed Notice, a Class Member does not release their FLSA claims unless they submit a Claim Form and the proposed Notice explains the following:

> **As discussed herein, unless you choose to opt-out of the settlement, you will release claims under Pennsylvania law.**
>
> If you opt-in to the settlement, you will release claims under both federal law and Pennsylvania law. Consequently, you would not be able to bring claims for the Class Period at a later time. If you do nothing, you will only release claims under Pennsylvania state law for the Class Period and may still be able to bring claims for violation of federal law at a later time.
>
> You should be aware that claims under federal law are limited to a two- or three-year statute of limitations and Pennsylvania has a three-year stature of limitations. Therefore, delay in joining this case, or proceeding separately, may result in some

> or all of your claims expiring as a matter of law.  If you pursue your claims
> elsewhere, you may be awarded a lesser amount than your award in this settlement,
> a greater amount than your award, or nothing at all.

See (Doc. No. 101-1 at 33) (bolded in original).  In light of the decisions discussed supra, and

because the Class Members will be appraised of what claims they are releasing in the proposed

Notice, the Court concludes that the parties' release concerning the FLSA claim is acceptable.

See Copley, 2023 WL 1878581, at *7 (finding a release of FLSA claims acceptable when the

proposed notice explains the opt-out process).  Therefore, because "there are no obvious

deficiencies and the settlement falls within the range of reason," see Zimmerman v. Zwicker &

Assocs., P.C., No. 09-cv-03905, 2011 WL 65912 at *2 (D.N.J. Jan. 10, 2011), and because the

proposed settlement appears to be "a fair and reasonable resolution of a bona fide dispute over

FLSA provisions," see In re Chickie's & Pete's Wage Litig., No. 12-cv-06820, 2014 WL

911718, at *2 (E.D. Pa. Mar. 7, 2014), the Court will preliminarily approve the Settlement

Agreement submitted in this case (Doc. No. 101-1).

Upon consideration of the above, the Court concludes that the proposed plan for the

submission of claims by Class Members is consistent with standard practice in wage and hour

class action disputes.  See Lunemann, 2024 WL 2133803, at *10 (finding that, in a hybrid Rule

23 and FLSA case, mailing notice to the class members based on the defendant's records

constitutes adequate notice); Wood v. Saroj & Manju Invests. Phila. LLC, No. 19-cv-02820,

2020 WL 7711409, at *2 (E.D. Pa. Dec. 28, 2020) (preliminarily approving the mailing of claim

forms to class members based on the defendants' data);[12] see also Ricci v. Newrez LLC, No. 22-

---

[12] The Court notes that an almost identical notice plan was proposed and preliminarily approved
in Wood, a case in which the defendants provided the settlement administrator with "last known
addresses, last known telephone numbers, and the last four digits of the social security numbers
of all class members," and the settlement administrator stated its intent to "after cross-checking
class members' addresses through the National Change of Address Registry, mail all class

cv-00650 (E.D. Pa. June 21, 2023), ECF No. 49 (preliminarily approving the mailing of notice forms to class members identified by the defendant); <u>Ball v. New River Valley Pizza, LLC</u>, No. 19-cv-00362 (W.D. Va. July 20, 2020), ECF No. 15 (preliminarily approving the mailing of claim forms to class members (pizza delivery drivers)); <u>Breit v. GBR Pizza Inc.</u>, No. 19-cv-00257 (E.D. N.C. Oct. 30, 2019), ECF No. 19 (same).

As to the issue of a proposed award of attorney's fees, the parties maintain that, subject to final approval by the Court, Class Counsel may seek an award of attorney's fees not to exceed $53,000 of the total settlement value plus reimbursement of actual litigation costs in the amount of $14,000.  (Doc. Nos. 100 at 5; 101-1 at 7 ¶ 35.)[13]  Defendants will not oppose or object to the request for fees and costs.  (Doc. Nos. 100 at 5; 101-1 at 7 ¶ 35.)  The Court notes that its role at this preliminary stage is not to approve those amounts but rather to simply determine that the proposal is reasonable for purposes of providing Notice to Class Members and scheduling a final fairness hearing.  The Court concludes that Lead Counsel's proposed request appears reasonable for purposes of Notice to the Class Members, as it is within the range typically awarded in similar cases in this Circuit.  <u>See, e.g.</u>, <u>Crevatas v. Smith Mgmt. & Consulting</u>, No. 15-cv-02307, 2017 WL 1078174, at *5 (M.D. Pa. Mar. 22, 2017) (quoting <u>Kraus v. PA FIT II, LLC</u>, 155 F. Supp. 3d 516, 534 (E.D. Pa. 2016)) (stating that "[c]ourts have approved attorneys' fees in FLSA [collective and class action] settlement agreements 'from roughly 20–40%' of the settlement fund") (alteration and internal quotation marks in original); <u>Tavares v. S-L Distrib. Co.</u>, No. 13-cv-01313, 2016 WL 1743268, at *12 (M.D. Pa. May 2, 2026) (stating that "[t]here is no

---

members the notice of the settlement and the claim form via first-class mail."  <u>See</u> <u>Wood</u>, 2020 WL 7711409, at *2.

[13]  The parties state that, "[p]rior to the final approval hearing and incorporated within their motion for final approval of the Settlement, Class Counsel will file a motion seeking an award of fees not to exceed 35% of the total settlement amount."  (Doc. No. 100 at 22.)

consensus on what percentage of a common fund is reasonable, although several courts in this circuit have observed that percentage of recovery fee awards generally range from 19% to 45%, with 25% being typical") (internal quotation marks and citation omitted).

With regard to any agreement under Rule 23(e)(3), the parties do not have a separate agreement and therefore, the Court need not address this factor. Considering all of these factors as a whole, the Court finds that they clearly support a conclusion that the relief provided by the Settlement is adequate. The Court turns to an assessment of the final Rule 23(e)(2)(C) factor.

### 4.    Whether the Settlement Treats Class Members Equitably Relative to Each Other

As noted supra, Rule 23(e)(2)(D) asks courts to determine whether a settlement treats class members equitably relative to one another. Here, the claims process described by the parties apportions an individualized amount to Class Members who timely submit valid claims in proportion to their losses—with a minimum payment of $30.00—all as calculated based on Defendants' provided data (which includes the total number of recorded miles and any offset for wages paid over the minimum wage), the amount of individuals in the class (the "Class Amount"), and the "Net Settlement Amount,"[14] as defined by the parties in the Settlement. See (Doc. No. 101-1 at 4, 8–9, 30). This means that Class Members' payment will be allocated on a pro rata basis determined by the calculation of loss. Each Class Member who does not file a Claim Form and does not exclude themselves will receive a payment of $30.00. (Id. at 9, 30–31.) The Court finds that this plan of distribution treats Class Members equitably relative to each

---

[14] The parties define the Net Settlement Amount as the total settlement amount (the "Total Settlement Amount" or "Maximum Settlement Amount") of $160,000 "less attorneys' fees and costs, claims administration fees, a service award, guaranteed minimum payments, mediation fees attributable to the mediation held on December 20, 2024, and employer portion of taxes (if any). (Doc. No. 101-1 at 4.)

other, as required by Rule 23(e)(2)(D).

The parties have also agreed that, subject to the Court's final approval, Plaintiff may seek a service award reflecting the amount of time and effort expended in acting as a Class Representative for the Settlement Class in the amount of $5,000.00.  (Doc. Nos. 100 at 5; 101-1 at 7 ¶ 37.)[15]  The Notice informs the Class Members of this agreement.  (Doc. No. 101-1 at 35.) "[A] modest award of $5,000 is within the range of similar awards approved in other collective/class actions. . . ."  Caddick v. Tasty Baking Co., No. 19-cv-02106, 2021 WL 4989587, at *10 (E.D. Pa. Oct. 27, 2021); Shabazz v. Colonial Park Care Ctr. LLC, No. 17-cv-00445, 2021 WL 4860770, at *4 (M.D. Pa. Oct. 19, 2021) (finding that a proposed service award of $5,000 to the name plaintiff in a FLSA case was appropriate); see also Bredbenner v. Liberty Travel, Inc., 2011 WL 1344745, at *23 (D.N.J. Apr. 8, 2011) (stating that courts "have ample authority to award incentive or 'service' payments to particular class members where the individual provided a benefit to the class or incurred risks during the course of litigation [in FLSA collective action").  Therefore, the Court finds that a service award for Plaintiff is appropriate in this case.  The Court turns to the issue of the proposed form and method of notice to the Settlement Class.

### C.    Approval of Proposed Form and Method of Notice to Class

With regard to the proposed form and method of notice directed to members of the Settlement Class, Federal Rule of Civil Procedure 23(c)(2)(B) requires that "the Court [] direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  See Fed. R. Civ. P.

---

[15]  The parties maintain that Plaintiff's service award should be approved in the amount reflected in the Settlement Agreement because it is "amply justified."  (Doc. No. 100 at 24.)

23(c)(2)(B).[16]  Under Rule 23(c)(2)(B), therefore, "[t]he notice must clearly and concisely state

in plain, easily understood language" the following:

> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> (v)     that the court will exclude from the class any member who requests exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

See Fed. R. Civ. P. 23(c)(2)(B).  Moreover, Rule 23(h) requires that "[n]otice of the motion [for

attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class

members in a reasonable manner."  See Fed. R. Civ. P. 23(h)(1).  Due process demands "that

notice be 'reasonably calculated, under all the circumstances, to apprise the interested parties of

the pendency of the action and afford them an opportunity to present their objections.'"  See In re

Nat'l Football League Players Concussion Inj. Litig., 821 F.3d at 435 (quoting Mullane v. Cent.

Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950)).

In connection with the instant motion, the parties state that once the Settlement

Administrator has received the Final Class Data List from Defendants as described supra, the

Settlement Administrator, CAC Services Group, LLC, will mail the notice to all Class Members

by first-class United States mail.  (Doc. Nos. 100 at 5; 101-1 at 13, 36.)[17]  The parties attest that

---

[16] In a similar vein, Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the [C]ourt will likely be able" both to "approve the proposal under Rule 23(e)(2); and [] certify the class for purposes of judgment on the proposal."  See Fed. R. Civ. P. 23(e)(1)(B).  "The Rule 23(e) notice is designed to summarize the litigation and the settlement and 'to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation.'"  In re Prudential Ins., 148 F.3d at 327 (quoting RUBENSTEIN ET AL., supra, § 8.32 at 8-109).

[17] The parties also represent that the Settlement Administrator's fees, not to exceed $12,000, will

the Settlement Administrator will comply with all federal and state reporting requirements.  (Id. at 12.)  The Third Circuit stated that first-class mail has been considered sufficient to satisfy Rules 23(d)(2) and 23(e).  See In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig., 269 F.R.D. 468, 482 (E.D. Pa. 2010) (stating that direct mailing of class action notices "has been found to satisfy Rule 23) (citing Zimmer Paper Prods., Inc. v. Berger & Montague, P.C., 758 F.2d 86, 90–91 (3d Cir. 1985)).  Thus, the mailing of the Notice to Class Members complies with Rules 23(c)(2)(B) and 23(e)(1) as well as due process because the mailing of the Notice and Claim Form is "reasonably calculated to reach interested parties" and "apprise [Class Members] of the pendency of the action."  See Mullane, 339 U.S. at 314, 318.

Further, having reviewed the proposed Notice (Doc. No. 101-1 at 29–36), the Court is satisfied that its form and substance meet the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and 23(e)(1), as well as due process.  It informs the Class Members of the following: (a) the rights of the Class Members, including instructions as to how objections may be lodged, exclusions may be requested, and the completion and submission of a Claim Form to the Settlement Administrator; (b) the nature, history, and status of this litigation, as well as the difference between the state and federal claims; (c) the proposed Settlement; (d) a description of the proposed plan of payment; (e) the maximum fees and expenses to be sought by counsel; (f) the definition of the Settlement Class; (g) the basis for the proposed Settlement; (h) the calculation of each Member's payment; (i) the Class's claims; (j) the parties' disagreement over damages and liability; (k) contact information for all counsel, the Court,[18] and the Settlement

---

be paid from the settlement amount.  (Doc. Nos. 100 at 5; 101-1 at 8 ¶ 38, 36.)

[18]  The Court notes that the address listed for the Clerk of Court is incorrect (Doc. No. 101-1 at 33), and directs the parties to amend the address in the notice to the Class Members.  The proper address is the Sylvia H. Rambo United States Courthouse, 1501 North 6th Street, Suite 101,

Administrator; and (l) the time, date, and location of the Final Fairness Hearing.  See Fed. R. Civ. P. 23(c)(2)(B), (e)(1).

In addition, with regard to the requirements of Rule 23(h), the Notice informs Class Members that Class Counsel will seek attorneys' fees of $53,0000, which equals approximately 33 percent of the total settlement amount, and reimbursement of expenses of up to $14,000, all to be paid from the total settlement amount.  (Doc. No. 101-1 at 35.)

Upon consideration of the foregoing, the Court will approve the proposed Notice, except for the Notice's description of the Clerk of Court's address and of Class Counsel for reasons discussed infra,[19] and appoint CAC Services Group, LLC as the Settlement Administrator for the Settlement.

### D.    Appointment of Class Counsel and Class Representative

The parties request that the Court appoint Class Counsel and Plaintiff as Class Representative.  Specifically, Plaintiff requests the appointment of Forester Haynie PLLC and Weihaus & Potasnick as counsel for the class.  (Doc. Nos. 99; 100 at 26.)  "[T]he application [for appointment as class counsel] is generally submitted as part of the certification motion." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.273 (2004).  The Third Circuit has stated that "a district court's decision to certify a class must precede the appointment of class counsel."  See Sheinberg v. Sorensen, 606 F.3d 130, 132 (3d Cir. 2010) (emphasis added)); see also RUBENSTEIN, ET AL., supra, at § 3.84 (stating that "it is clear that a court must appoint class

---

Harrisburg, PA 17102.

[19]  The relevant portion of the proposed Notice (Doc. No. 101-1 at 33–36) should be amended in accordance with the Court's decision to decline to appoint Class Counsel at this preliminary stage.  See Sheinberg, 606 F.3d at 132 (holding that, under "the plain language" of Federal Rule of Civil Procedure 23(g)(1), a court's decision to certify a class must precede appointment of class counsel).

counsel at the same time it certifies the class").

In the instant case, because only the motion for preliminary certification of the class, specifically for the purpose of settlement, is presently before the Court, the Court will decline to appoint Class Counsel at this time and, instead, will designate Forester Haynie PLLC and Weihaus & Potasnick as Interim Counsel.  See Sheinberg, 606 F.3d at 132.  Accordingly, pursuant to Rule 23, and for the purposes of settlement only, the Court will preliminarily appoint Plaintiff as Class Representative and Forester Haynie PLLC and Weihaus & Potasnick as Interim Counsel for the Settlement Class.

## IV.    CONCLUSION

For the reasons stated supra, the Court will grant the parties' joint motion for preliminary approval of class action settlement (Doc. No. 100) and will preliminarily certify the proposed Settlement Class.  The Court will also approve the proposed Notice, as amended per the Court's discussion herein, and the appointment of CAC Services Group, LLC to serve as Settlement Administrator, and will schedule a Final Fairness Hearing.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania